UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MVP HEALTH PLAN, INC.,

                Plaintiff,

      v.                                        1:18-CV-677
                                                        (FJS/CFH)

COTIVITI, INC.,

                Defendant.

APPEARANCES                                  OF COUNSEL

**GREENBERG TRAURIG, LLP**             **HENRY M. GREENBERG, ESQ.**
54 State Street                               **CYNTHIA E. NEIDL, ESQ.**
6th Floor
Albany, New York 12207
Attorneys for Plaintiff

**EPSTEIN BECKER & GREEN, P.C.**       **ROBERT M. TRAVISANO, ESQ.**
One Gateway Center
13th Floor
Newark, New Jersey 07102
Attorneys for Plaintiff

**KAPLAN HECKER & FINK LLP**         **ROBERTA A. KAPLAN, ESQ.**
350 Fifth Avenue                        **DEREK WIKSTROM, ESQ.**
Suite 7110                                    **GABRIELLE TENZER, ESQ.**
New York, New York 10118
Attorneys for Plaintiff

**FOLEY & LARDNER LLP**                  **ROBERT A. SCHER, ESQ.**
90 Park Avenue                             **EMILY BEER, ESQ.**
New York, New York 100016         **MICHAEL P. MATTHEWS, ESQ.**
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

MVP Health Plan ("Plaintiff") brings this action against Cotiviti (formerly known as Verscend Technologies) ("Defendant") seeking compensatory damages, punitive damages, declaratory relief, and attorney's fees. *See generally* Dkt. No. 24, Amended Complaint. Defendant has moved (1) to dismiss all claims in Plaintiff's complaint against it pursuant to Rules 12(b)(6) and 9(b), (2) for declaratory judgment pursuant to Rule 57, and (3) to strike claims for damages and fees and demand for a jury trial pursuant to Rules 12 and 39 of the Federal Rules of Civil Procedure. *See generally* Dkt. No. 26.

**II. BACKGROUND**

Plaintiff is a regional health plan that offers Medicare Advantage plans to its enrollees. Instead of receiving a fee from the Centers for Medicare and Medicaid Services ("CMS") for each service an enrollee receives, the Medicare Advantage plans receive a monthly fee per enrollee, known as a "capitation payment." The amount of the capitation payment that a Medicare Advantage plan receives varies for each enrollee. There is a base fee amount for an enrollee and then an additional fee based on the "risk adjustment processing system" ("RAPS"), which accounts for the financial risk an enrollee presents. Medicare Advantage plans also use RAPS data in preparing bids for submission in an annual competitive bidding process in which CMS determines the amount it will pay on each plan.

CMS has specific requirements about how Medicare Advantage plans must submit enrollees' diagnosis and treatment data, and which information they can and cannot submit as

part of the RAPS data. On December 1, 2008, Plaintiff and Defendant (operating under a different name) entered into a Master Service Agreement ("the 2008 Contract") whereby Defendant agreed to filter Plaintiff's data, convert it into a format that CMS would accept, and submit the data to CMS on Plaintiff's behalf. Plaintiff agreed to pay fees in exchange for the services rendered pursuant to the agreement and to assist Defendant in performing its responsibilities by providing Defendant with data and access to certain CMS systems. The parties extended the 2008 Contract by amendment in 2009 and again in 2011.

Plaintiff alleges that Defendant materially breached the 2008 Contract and then concealed the breaches from Plaintiff. According to Plaintiff, Defendant's filtering logic was fundamentally flawed; and Defendant submitted RAPS data to CMS that should have been omitted, while failing to submit data that should have been included, based on CMS's criteria. Because of these errors, Plaintiff alleges that it was deprived of additional payments CMS owed it for coverage it was providing to its enrollees. Plaintiff also alleges that, because of the flawed filtering logic, its annual bid submissions to CMS were incorrect.

Plaintiff further claims that Defendant assured it that the filtering logic was performing completely and accurately; and, instead of disclosing the flaws in the logic, Defendant sought to negotiate a new contract governing the relationship between the parties. Defendant proposed provisions in the new contract ("the 2017 Contract") that would, according to Plaintiff, limit or eliminate liability for Defendant's ongoing contractual breaches, which Defendant knew about but Plaintiff did not.

The liability limiting provision in the 2017 Contract reads as follows:

> THE PARTIES AGREE THAT NO DIRECTOR, OFFICER, EMPLOYEE, AGENT, OR VOLUNTEER OF EITHER PARTY SHALL INCUR ANY FINANCIAL RESPONSIBILITY OR LIABILITY IN CONNECTION WITH THIS AGREEMENT.

> NOTWITHSTANDING ANYTHING TO THE CONTRARY, OR ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY, EVEN IF ADVISED OF THE POSSIBILITY OF LOSSES, IN NO EVENT SHALL EITHER PARTY, OR ITS AGENT, BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, TREBLE, OR SPECIAL DAMAGES, INCLUDING ANY LOST PROFITS, DATA, BUSINESS, GOODWILL, ANTICIPATED SAVINGS, OPPORTUNITY OR USE OR OTHER WHETHER IN CONTRACT (INCLUDING BREACH OF WARRANTY) OR IN TORT, AND INCLUDING, BUT NOT LIMITED TO, LOST PROFITS OR OTHER ECONOMIC LOSS.
>
> LIABILITY CAP. NOTWITHSTANDING ANYTHING TO THE CONTRARY, OR ANY FAILURE OF ESSENTIAL PURPOSE OF ANY LIMITED REMEDY, NEITHER PARTY'S AGREGATE LIABILITY, IF ANY, TO THE OTHER OR TO ANY THIRD PARTY FOR CLAIMED LOSS ARISING UNDER THIS AGREEMENT AND THE INCORPORATED BUSINESS ASSOCIATES AGREEMENT, SHALL EXCEED SEVEN TIMES FEES PAID OR PAYABLE BY [PLAINTIFF] FOR THE PRIOR 12 MONTH PERIOD PRECEDING THE CLAIM.

*See* Dkt. No. 24-5 at Section V.

Based on these allegations, Plaintiff asserts the following eight causes of action:

(1) breach of the 2008 Contract;

(2) breach of the covenant of good faith and fair dealing with respect to the 2008 Contract;

(3) fraudulent inducement;

(4) contract-based rescission;

(5) declaratory judgment;

(6) breach of the 2017 Contract;

(7) breach of the covenant of good faith and fair dealing with respect to the 2017 Contract; and

(8) unjust enrichment.

*See generally* Dkt. No. 24.

## III. DISCUSSION

**A. The parties' business relationship**

The parties dispute whether the 2008 Contract or the 2017 Contract controls their relationship. Defendant argues that the Court should dismiss Plaintiff's claims regarding the 2008 Contract because the 2017 Contract is superseding. *See* Dkt. No. 26-1, Def's Memorandum in Support, at 10-11. Conversely, Plaintiff claims that Defendant fraudulently induced it to sign the 2017 Contract; and, thus, that contract is invalid, and the 2008 Contract governs. *See* Dkt. No. 27, Pl's Memorandum in Opposition, at 5-6.

To resolve Defendant's pending motion, the Court must first decide which contract controls. To do so, it must determine whether Defendant fraudulently induced Plaintiff to sign the 2017 Contract, as Plaintiff alleges in its third cause of action.

**B. Legal standards**

Defendant moves to dismiss Plaintiff's third cause of action for fraudulent inducement pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007]). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing [*Twombly*, 550 U.S.] at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929). "The

plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

### C. Fraudulent inducement

The elements of fraudulent inducement are "'(1) a material misrepresentation or omission of fact; (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff.'" *Levine v. Landy*, 860 F. Supp. 2d 184, 193 (N.D.N.Y. 2012) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)).

Under New York law, "'a claim for common law fraud will not lie if the claim is duplicative of a claim for breach of contract.'" *Tarzy v. Dwyer*, No. 18 Civ. 1456, 2019 U.S. Dist. LEXIS 3413, *26 (S.D.N.Y. Jan. 8, 2019) (quotation omitted). "[P]arallel fraud and

contract claims may be brought if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007) (citing *Bridgestone/Firestone v. Recovery Credit Servs. Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

In addition to pleading each of the elements of fraudulent inducement, a plaintiff must also plead the claim with the particularity Rule 9(b) requires. Rule 9(b) states, "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Although fraudulent intent may be alleged generally, the Second Circuit has held, "'we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] … plaintiffs must allege facts that give rise to a *strong inference* of fraudulent intent.'" *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (internal quotation and citation omitted)) (emphasis added). "'The requisite "strong inference" of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* at 290-91 (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)).

Thus, to plead fraudulent inducement by misrepresentation with the specificity that Rule 9(b) requires, "'the complaint must: (1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Id.* at 290 (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

Here, Plaintiff alleges that Defendant made false representations concerning its 2016 Service Organization Control ("SOC") report, the 2016 "sweepback" report, and its reasons for negotiating the 2017 Contract.

Specifically, Plaintiff asserts that Defendant's COO, Jordan Bazinsky, endorsed an SOC report dated September 22, 2016, which "fairly present[ed]" Defendant's systems and controls. *See* Dkt. No. 24 at ¶¶ 58-59. That SOC report represented that Defendant's Risk Adjustment Process was performing "completely and accurately," and its logic was appropriately filtering information. *See id.* at ¶ 60.

In addition, during its "sweepback" process in early 2016, Defendant discovered that a draft of its RAPS submissions to CMS contained extraneous data. *See id.* at ¶ 67. One of Defendant's employees, Deborah Coakley, reported the issue to one of Plaintiff's employees, describing it as a "small and contained problem." *See id.* at ¶ 68.

Plaintiff contends that the filtering logic was not operating accurately, nor was the problem "small and contained." Instead, Plaintiff claims that the filtering logic was "catastrophically flawed," and the data submitted to CMS was erroneously under- and over-inclusive. *See id.* at ¶¶ 6, 8.

Plaintiff also alleges that, in or around September 2016, Defendant asked it to negotiate a new agreement for various reasons, including that Defendant changed its name and it wanted to review and modify its pricing. *See id.* at ¶¶ 73, 75. Furthermore, on or around November 10, 2016, Defendant's employee, Joseph Alberta, allegedly told Plaintiff that Defendant wanted to

- 8 -

include terms to limit its liability, describing them as "additional terms we standardly include." *See id.* at ¶ 77. A few weeks later, Mr. Alberta sent a marked-up draft of the contract to Plaintiff that included a comment from Justin Dooley, an employee in Defendant's legal department, stating that the rest of the contract would be "moot" without the terms limiting liability. *See id.* at ¶ 78. At that time, Plaintiff was unaware of the flaws in the filtering logic. *See id.* at ¶ 73. Plaintiff claims that it relied on Defendant's misrepresentations to its detriment, and it would not have signed the 2017 Agreement had it been aware of the defects in the filtering logic. *See id.* at ¶ 130.

Plaintiff further contends that, in a phone call on May 18, 2017, between Plaintiff and five of Defendant's employees (Roger Meeks, Pam Price, Heidi Dalton, David Pacquette, and Eswaran Kelyani), Defendant apologized and admitted that its filtering logic was flawed, it had been looking into the issue "for some time," and the flaws had "existed for many years." *See id.* at ¶¶ 95-97. The Court finds that Defendant's admission, if true, is sufficient to infer that Defendant knew of problems with its filtering logic before it sought to enter into the 2017 Contract that completely limited its liability.

Plaintiff also alleges that Defendant had the motive and opportunity to make false representations because, under the 2017 Contract, no director, officer, employee, agent or volunteer of either party could incur financial responsibility or liability, nor could either party be liable for consequential, incidental, indirect, treble, or special damages. *See id.* at ¶¶ 82, 111. Plaintiff contends that this would be appealing to Defendant, who, by breaching the 2008 Contract, caused Plaintiff to suffer "tens of millions of dollars" in damages, stemming from overpayments CMS made to Plaintiff that had to be refunded, underpayments that Plaintiff

would have received but for the erroneous RAPS submissions, and financial losses in the annual bidding process.  *See generally id.* at ¶¶ 8-9, 109(a)-(f), 111.

Assuming these allegations to be true, the Court finds that a fact-finder could conclude that Defendant knew about the flaws in its filtering logic, made false representations to Plaintiff about the functionality of that logic, and proffered false reasons to Plaintiff to negotiate an agreement.  Furthermore, the Court concludes that, presented with these facts, a fact-finder could conclude that these statements were misrepresentations of present fact, which Defendant made with the intent to induce Plaintiff to enter into the 2017 Contract.  As such, these misrepresentations would be collateral to the 2017 Contract and, thus, involve a separate breach of duty.  *See Merrill Lynch & Co.*, 500 F.3d at 184 (citations omitted)

Therefore, the Court concludes that Plaintiff has stated a claim for relief that is plausible on its face and that Plaintiff's allegations satisfy Rule 9(b)'s particularity requirement.[1]

**D.  Defendant's remaining requests for relief**

Although the Court has concluded that Plaintiff has adequately pled its third cause of action for fraudulent inducement, this does not mean that Plaintiff will ultimately prevail on this claim.  The resolution of this claim must await further discovery and either a motion for summary judgment or trial.  Moreover, as noted above, the Court must resolve this issue prior to determining the other issues that Defendant has raised in the pending motion.

---

[1] In light of the Court's conclusion that Plaintiff has adequately pled its claim for fraudulent inducement by misrepresentation, the Court does not need to address the merits of the parties' arguments regarding whether Plaintiff adequately pled fraudulent inducement by omission.

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion, *see* Dkt. No. 26, is **DENIED** insofar as Defendant seeks dismissal of Plaintiff's third cause of action for fraudulent inducement and is **RESERVED** in all other respects; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters, including the issue of whether it would be appropriate to limit discovery, in the first instance, to Plaintiff's third cause of action for fraudulent inducement, upon which resolution of Plaintiff's other causes of action and certain relief that Defendant requested in the motion addressed herein rely.

**IT IS SO ORDERED.**

Dated: November 1, 2019
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge